UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON SINGLETON,

                Plaintiff,

-against-

CITY OF NEW YORK; DEPARTMENT OF CORRECTIONS; BRONX COUNTY DISTRICT ATTORNEY OFFICE; CYNTHIA BRANN, CITY OF NEW YORK DEPARTMENT OF CORRECTIONS COMMISSIONER; ALLISON KLINE, ASSISTANT DISTRICT ATTORNEY BRONX COUNTY; MEGAN LEO, ASSISTANT DISTRICT ATTORNEY BRONX COUNTY; DARCEL CLARK, BRONX DISTRICT ATTORNEY; RALPH FABRIZIO; HEIDI GROSSMAN,

                Defendants.

21-CV-2893 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is currently incarcerated in Ulster Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants violated his rights while he was detained on Rikers Island. By order dated February 2, 2022, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP).[1]

### STANDARD OF REVIEW

      The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff's amended complaint is not the model of clarity, but the Court is able to discern from the pleading that Plaintiff alleges that during his detention in the custody of the New York City Department of Correction (DOC), beginning on March 17, 2019, his outgoing phone calls and mail, including legal communications, were turned over to the Bronx District Attorney's Office for use in prosecuting him, in violation of his constitutional rights. Plaintiff also alleges that a prosecutor violated her obligations under *Brady v. Maryland* (ECF No. 9 at 6) in connection with his criminal proceedings, and in addition, he makes generalized allegations regarding his pretrial detention and the conditions at Rikers Island. Several newspaper articles concerning Rikers Island and administrative requests and complaints concerning law library access are appended to the amended complaint. A review of the New York City DOC website reveals that, on December 16, 2021, Plaintiff was convicted of criminal contempt in the first degree, a class E felony, and that, on January 31, 2022, he was transferred to New York State custody. *See* https://a073-ils-web.nyc.gov/inmatelookup/pages/home/home.jsf. A review of the New York State Department of Correction and Community Supervision website reveals that Plaintiff is incarcerated in Ulster Correctional Facility, serving a sentence of two to four years' incarceration. *See* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130.

Plaintiff sues the City of New York, former City of New York DOC Commissioner Cynthia Brann, Assistant District Attorney (ADA) Bronx County Allison Kline, ADA Megan Leo, Bronx District Attorney Darcel Clark, the DOC, the Bronx County District Attorney's Officer, Bronx Supreme Court Justice Ralph Fabrizio, and DOC Deputy Commissioner/General Counsel Heidi Grossman, seeking $5 million in damages. The Court dismisses the amended complaint for the following reasons.

## DISCUSSION

A.     **The DOC and the City of New York**

The Court must dismiss Plaintiff's claims against the DOC because an agency of the City of New York, such as the DOC, is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions as proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (the New York City Police Department is not a suable entity); *see Johnson v. Dobry*, 660 F. App'x 69, 72 (2d Cir. 2016) (summary order) (the DOC is not a suable entity (citing *Jenkins*, 478 F.3d at 93 n.19))); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against the DOC for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's claims against the City of New York, liberally construed as alleging, among other things, that the DOC has a custom or policy of recording all calls from detainees at Rikers Island, including Plaintiff's calls, and turning them over to prosecutors for use in criminal prosecutions, (ECF No. 9 at 12), must also be dismissed. When a plaintiff sues the City of New York under Section 1983, it is not enough for the plaintiff to allege that one of the City of New York's employees or agents engaged in some wrongdoing. The plaintiff must show that the City of New York itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011).

In other words, to state a claim against the City of New York under Section 1983, the plaintiff must allege facts showing (1) the existence of a City of New York policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff's conclusory allegations fail to show that a policy, custom, or practice of the City of New York caused a violation of his federal constitutional rights. The Court therefore also dismisses Plaintiff's clams against the City of New York for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Justice Ralph Fabrizio**

The doctrine of judicial immunity bars Plaintiff's claims under Section 1983 for damages against Justice Ralph Fabrizio of the New York Supreme Court, Bronx County. Under this doctrine, judges are absolutely immune from suit for claims for damages against them in their individual capacities for any of their actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when a judge acts outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed

5

broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff's claims against Justice Fabrizio arise from Justice Fabrizio's actions and decisions while presiding over Plaintiff's state-court criminal action. Notwithstanding Plaintiff's conclusory assertions that Justice Fabrizio acted outside the scope of his judicial function, this conduct is well within the scope of Justice Fabrizio's judicial duties. Justice Fabrizio is therefore immune from suit as to Plaintiff's claims under Section 1983 for damages against him under the doctrine of judicial immunity. Accordingly, the Court dismisses those claims under the doctrine of judicial immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

C.   **Bronx County District Attorney's Office, Bronx District Attorney Darcel Clark, ADA Alison Kline, and ADA Megan Leo**

The Court must also dismiss Plaintiff's claims under Section 1983 for damages against the Bronx County District Attorney's Office, Bronx District Attorney Darcel Clark, ADA Alison Kline, and ADA Megan Leo. Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler* 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who

6

performed it") (internal quotation marks and citation omitted). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

Plaintiff's claims under Section 1983 for damages against the Bronx County District Attorney's Office, Bronx District Attorney Darcel Clark, ADA Alison Kline, and ADA Megan Leo arise from these defendants' criminal prosecution of Plaintiff. Plaintiffs' conclusory assertions of bad faith and bias are insufficient to demonstrate that the defendants are not entitled to immunity. The Court therefore dismisses these claims under the doctrine of prosecutorial immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011) (claims dismissed for prosecutorial immunity are frivolous under the *in forma pauperis* statute).

**D.    City of New York Department of Correction (DOC) Commissioner Cynthia Brann**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing how Defendants Brann was personally involved in the events underlying his claims. Plaintiff's claims against Defendant Brann are therefore dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

E.     **Fourth Amendment Claims**

The Court liberally construes Plaintiff's claim that his outgoing phone calls and mail, including legal communications, were turned over to the Bronx District Attorney's Office for use in prosecuting him as arising under the Fourth Amendment's search and seizure clause.

The Fourth "Amendment protects individual privacy against certain kinds of governmental intrusion." *Katz v. United States*, 389 U.S. 347, 350 (1967). Prisoners, however, have a diminished expectation of privacy, and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). This general principle of a diminished expectation of privacy applies in all contexts of prison life: "If security concerns can justify strip and body-cavity searches, and wholly random cell searches, then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored." *United States v. Amen*, 831 F.2d 373, 379–80 (2d Cir.1987) (citations omitted).

Thus, while incarcerated, Plaintiff does not retain any privacy with respect to the monitoring and recording of his phone calls or the monitoring of his mail. Because Plaintiff cannot expect to keep private his communications while he was in the custody of the DOC, the decision to disclose this material did not violate the Fourth Amendment's prohibition against unreasonable searches.

To the extent Plaintiff is asserting that his legal communications were turned over to the prosecution, he still fails to state a claim because a breach of the attorney-client privilege, by

itself, does not generate a private cause of action. *See Madden v. Creative Servs., Inc.*, 51 F.3d 11 (2d Cir.1995) (relying upon *Madden v. Creative Servs., Inc.*, 84 N.Y.2d 738 (1995)). If Plaintiff chose to speak with his attorney on a monitored phone, that he knew was being monitored, his decision to do so acts as a waiver of the attorney-client privilege. *See United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (finding that because the defendant was aware that his phone calls were being monitored by the Bureau of Prisons, his decision to communicate telephonically constituted a waiver of the privilege).

Because Plaintiff does not have an expectation of privacy with respect to his mail and phone calls, his allegations fail to state a claim entitling him to relief and therefore must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**F.     Mail Interference Claims**

The Court liberally construes Plaintiff's claims that Defendants interfered with his mail as arising under the First Amendment. A prisoner's First Amendment rights encompass the right to "adequate, effective and meaningful" access to the courts and to the free flow of incoming and outgoing mail. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)).

Plaintiff's allegations concerning his legal mail implicates both an access-to-courts claim and a general mail tampering claim.

   1.     **Access-to-courts Claim**

Prisoners have "a constitutional right of access to the courts [that] gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to

9

mail them." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Bounds*, 420 U.S. at 824-28). Protecting these rights "require[] prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bourdon v. Loughren,* 386 F.3d 88, 92–93 (2d Cir. 2004) (quoting *Bounds,* 420 U.S. at 821, 828). But assistance from prison authorities is "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey,* 518 U.S. 343, 351 (1996) (internal quotation marks omitted).

Access to the courts does not require prison authorities to furnish inmates with unlimited access to any and all resources that might support a prisoner in presenting his legal claim. *Id.* at 355. A claim that an individual's right of access to the courts has been denied may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss or inadequate settlement of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).

To state a claim for denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct: (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks omitted); *see also Harbury*, 536 U.S. at 415. To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation caused by the defendant' s actions. *See Harbury*, 546 U.S. at 415. A mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level

of a constitutional violation." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing *Jones v. Smith*, 784 F.2d 149, 151- 52 (2d Cir. 1986)).

2. **Mail-tampering Claim**

To state a claim based on mail tampering, a plaintiff must allege that the incidents: (1) suggest an ongoing practice of censorship unjustified by a substantial government interest, or (2) have unjustifiably chilled the prisoner's right of access to the court or impaired his legal representation. *Davis*, 320 F.3d at 351. "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id.* at 351-52. But as few as two incidents of mail tampering may constitute a First Amendment violation if indicative of "regular" and "unjustifiable" interference with a prisoner's mail. *Id*. at 351; *see Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986).

Plaintiff does not allege enough facts suggesting that Defendants interfered with his mail in a manner that rises to the level of a constitutional violation because he does not state that Defendants subjected him to regular and unjustifiable interference with his mail that affected his ability to access the courts. Plaintiff is no stranger to this Court, and a review of the Public Access to Court Electronic Records (PACER) system reveals that from June 16, 2020, through January 24, 2022, Plaintiff filed six actions in this Court. In this action, from August 23, 2021, through December 2, 2021, Plaintiff filed eight documents. *See* ECF Nos. 5-12.  Nor does Plaintiff allege facts that indicate that the alleged mail tampering impaired his legal representation.

Because Plaintiff does not suggest any prejudice to a legal proceeding nor does he allege harm caused by Defendants' actions, his allegations also fail to state a claim under the First Amendment that his right to access the courts has been violated. The Court therefore dismisses

11

Plaintiff's right to access the courts and mail tampering claims. See 28 U.S.C. § 1915(e)(2)(B)(ii).

G.  **Thirteenth Amendment**

Plaintiff appears to assert a claim that his DOC detention violated the prohibition on slavery in the Thirteenth Amendment to the U.S. Constitution. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. "'Involuntary servitude' could encompass peonage, where a person is forced, through a threat of legal sanctions, to work off a debt." *Bailey v. Alabama*, 219 U.S. 219, 243 (1911); *Clyatt v. United States*, 197 U.S. 207, 215-16 (1905). "In every case in which [it] has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *United States v. Kozminski*, 487 U.S. 931, 943 (1988).

Plaintiff, who was in DOC custody following his arrest for violating an order of protection, does not provide any support for his claim that he was enslaved on Rikers Island. *See, e.g.*, *Dunn v. Prince*, 327 F. App'x 452, 454 (5th Cir. 2009) (rejecting the petitioner's "conclusional assertion that he was 'sold' into slavery because [the municipality] receive[d] payment from the [department of corrections] for all individuals held in the [county jail]"). The Court therefore dismisses Petitioner's Thirteenth Amendment claim challenging his detention for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

H.  **False Arrest and Malicious Prosecution Claims**

Because Plaintiff was convicted of criminal contempt in the first degree and because he does not allege that the conviction was reversed, expunged, or otherwise declared invalid, the Court must dismiss Plaintiff's Section 1983 claim that Defendants maliciously prosecuted him

12

by improperly monitoring his communications and unlawfully using those communications in the criminal proceedings to secure a conviction. These claims are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

The United States Supreme Court has explained:

> that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (italics in original); *see Heck*, 512 U.S. at 486-87 ("[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*[.]").

Success on Plaintiff's Section 1983 claim that Defendants maliciously prosecuted him, by improperly monitoring his communications and unlawfully using those communications in the criminal proceedings, would necessarily imply the invalidity of his conviction. Because Plaintiff has not alleged that his conviction was overturned or otherwise invalidated, and because Plaintiff seeks relief that would call into question the validity of that conviction, his claims are barred under *Heck*. *See Perez v. Cuomo*, No. 09-CV-1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983."). The Court must therefore dismiss Plaintiff's Section 1983 claim of malicious prosecution. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

### I. Leave to Amend Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff leave to amend further his complaint.

### CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Plaintiff's motions for summary judgment (ECF Nos. 11, 12) are denied as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   February 22, 2022
         New York, New York

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge